Approved: _____
KAIYA ARROYO
Assistant United States Attorney

Before: HONORABLE PAUL E. DAVISON
United States Magistrate Judge
Southern District of New York

22mj6663

---

UNITED STATES OF AMERICA

- v. -

YSENNI GOMEZ,
   a/k/a "Ysenni Peguero"
   a/k/a "Carolina"

                  Defendant.

SEALED COMPLAINT

Violations of 18 U.S.C. §§ 1591 and 1952

COUNTY OF OFFENSE: WESTCHESTER

---

SOUTHERN DISTRICT OF NEW YORK, ss.:

PAO MEI FISHER, being duly sworn, deposes and says that she is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

COUNT ONE
(Sex Trafficking By Means of Force, Threats, Fraud, and Coercion)

1. From at least in or about July 2022 through August 12, 2022, in the Southern District of New York, YSENNI GOMEZ, a/k/a "Ysenni Peguero," a/k/a "Carolina," the defendant, and others known and unknown, willfully and knowingly, in and affecting interstate and foreign commerce, recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized and solicited a person, and did benefit, financially and by receiving things of value, from participation in a venture which had engaged in such acts, knowing and in reckless disregard of the fact that means of force, threats of force, fraud, and coercion described in Title 18, United States Code, Section 1591(e)(2), and any combination of such means, would be used to cause that person to engage in commercial sex acts, to wit, GOMEZ recruited and coerced through force, threats, fraud, and coercion an individual, the Victim, to engage in commercial sex acts, in Tarrytown, New York, and elsewhere, that would benefit GOMEZ financially.

(Title 18, United States Code, Sections 1591(a)(1), (a)(2) and 2)

COUNT TWO
(Use of Interstate Facility to Promote Unlawful Activity)

2.   From at least in or about July 2022 through August 12, 2022, in the Southern District of New York, YSENNI GOMEZ, a/k/a "Ysenni Peguero," a/k/a/ "Carolina," the defendant, did use and cause to be used the mail and facilities in interstate and foreign commerce, with intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment and carrying on of an unlawful activity, and thereafter performed and attempted to perform an act to promote, manage, establish and carry on, and to facilitate the promotion, management, establishment and carrying on of such unlawful activity, to wit, GOMEZ used a cellular phone and the Internet to promote, manage, establish, and carry on a criminal business engaged in sex trafficking and prostitution, and promoting prostitution in violation of New York Penal Law §§ 230.00, 230.20, 230.25, and 230.30.

(Title 18, United States Code, Sections 1952(a)(3) and 2.)

The bases for my knowledge and the foregoing charges are, in part, as follows:

3.   I am a Special Agent with FBI, and I have been personally involved in the investigation of this matter. I am currently assigned to the FBI New York Westchester Safe Streets Task Force (the "Safe Streets Task Force"), which is a squad that is responsible for investigating sex trafficking and related crimes, including the sexual exploitation of individuals by means of force, fraud, or coercion. This affidavit is based upon my personal participation in the investigation, my examination of reports and records, and my conversations with law enforcement agents and other individuals. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## Coercion, Threats, and Force Exerted by GOMEZ to Make the Victim Perform Commercial Sex Acts

4. Based on my review of FBI reports and conversations with FBI agents, as well as my own observations and involvement in this case, I have learned the following, in substance and in part. On or about August 12, 2022, members of the Safe Streets Task Force interviewed a victim of sex trafficking, (the "Victim") at the Greenburgh Police Department. The Victim was interviewed in Spanish, which was then translated to others by a law enforcement officer who speaks Spanish. Based on my review of notes and conversations with law enforcement, I have learned that the Victim stated the following, in substance and in part:

   a. The Victim is a Spanish-speaking Venezuelan national who has resided in the United States for approximately eight months. The Victim is in the process of seeking legal asylum but does not currently have a permanent legal status with the United States government.

   b. In or about June 2022, the Victim saw an advertisement on Facebook seeking potential female employees to waitress at a restaurant located on Broadway in Manhattan, New York (the "Restaurant Location").

   c. In or about the middle to end of June 2022, the Victim responded to the advertisement, interviewed at the Restaurant Location with YSENNI GOMEZ, a/k/a "Ysenni Peguero," a/k/a "Carolina," the defendant, and understood that she had secured a position as a waitress. Approximately one week after the interview, the Victim returned to the Restaurant Location wearing all-black attire, as instructed by GOMEZ, to begin work as a waitress. Once at the restaurant, GOMEZ approached the Victim and told her that she would be working at a different restaurant. GOMEZ then instructed the Victim to get into a vehicle. The Victim complied. GOMEZ entered the vehicle through the front-driver's side door.

   d. Once inside the vehicle, GOMEZ informed the Victim that she would not be working at a restaurant. Instead, GOMEZ informed the Victim that she would be required to have sex with different individuals for money. The Victim initially refused. GOMEZ then stated that if the Victim did not comply, that GOMEZ would tell "immigration" that the Victim was not residing in the country legally. GOMEZ further stated, in sum and substance, that the Victim did not have a voice, and that she would be deported. The Victim again refused.

3

e.   GOMEZ then called a female ("Individual-1") on the telephone and spoke to her in English. GOMEZ then passed the telephone to the Victim. Individual-1 then began to make additional threats to the Victim, stating in sum and substance that Individual-1 would get the Victim deported if did not comply. GOMEZ also stated that she would call the police if the Victim refused. The Victim refused again and told Individual-1, in sum and substance, that the Victim had done nothing wrong and to call the police. When the Victim refused again, GOMEZ drove the Victim to Grand Central Station and allowed her to leave the car.

f.   In or about July 2022, GOMEZ and Individual-1 contacted the Victim again by telephone or some other type of remote communication ("Call-1"). During Call-1, GOMEZ again made further threats to the Victim, stating in sum and substance that the Victim had an order of deportation. The Victim responded to GOMEZ that GOMEZ's statements were untrue, and that the Victim had an appointment regarding her asylum matter on August 9, 2022. Either GOMEZ or Individual-1 would call the Immigration Judge to have the Victim deported if she did not comply with GOMEZ's demand to engage in commercial sex acts. The Victim again refused to comply.

g.   Approximately a few days to one week later, GOMEZ and Individual-1 called the Victim again ("Call-2") and stated that they are going to do what they can to get her deported and that the Victim must meet with them at Grand Central Station that day.

h.   Later the same day, the Victim met with GOMEZ at Grand Central Station. GOMEZ provides the Victim an ultimatum—either the Victim would engage in commercial sex acts, or she would be deported. At this meeting, the Victim succumbed to the repeated threats.

### Commercial Sex Acts by the Victim at GOMEZ's Behest

5.   I further understand that the Victim also stated the following, in substance and in part, during her August 12, 2022, interview:

a.   The Victim performed her first commercial sex act on the same evening that she relented to GOMEZ' threats in Grand Central Station. The Victim stated that she was afraid and was coerced into performing commercial sex acts for approximately

4

three weeks. Generally, the Victim was made to work approximately three nights per week and visit with approximately three clients per night. The Victim was usually required to perform both oral and vaginal sex acts during these interactions.

        b.    The Victim stated that she was made to work with two types of clients: regular clients and VIP clients. Regular clients paid approximately $200 for each encounter, which were arranged by GOMEZ. VIP clients paid approximately $500 to $700 per encounter, and the Victim was required to communicate with them directly prior to the encounter. Both types of clients either would pay GOMEZ directly or would pay the Victim. In instances where the client paid the Victim, the Victim was required to pay the entire amount to GOMEZ, who would provide her with a portion of the proceeds. The Victim would receive half of the price for regular clients, and $200 for VIP clients.

### Attempted Commercial Sex Act on August 11 to August 12, 2022

        6.    On or about August 11, 2022, members of the Safe Streets Task Force located an advertisement under the escort section of Bedpage.com tagged with the location "Westchester County" (the "Online Advertisement"). Bedpage.com is a website where individuals can post personals and/or classified ads on the internet. The Online Advertisement, which appears to have been posted on August 11, 2022, at approximately 4:40 p.m., advertised "yonkers kitty cat available to tease outcall-23," and included an image of a nearly naked woman on all-fours who is facing away from the camera. Based on my training and experience, I understand that this is an advertisement to solicit commercial sex acts, and that "outcall" references a sex act where the individual to provide the sex act for pay will travel to the client. The Online Advertisement included a telephone number ending in -5806 (the "5806 Number").

        a.    At approximately 11:30 p.m., an undercover officer with the Safe Streets Task Force ("UC") contacted the telephone number listed on the Online Advertisement via text message. The UC sent a message that stated, "You available for outcall?" The UC received a text message response from the same telephone number stating, in sum and substance, "yes" and "location?" The UC and the individual responding on the telephone number arranged to meet at a hotel located in Tarrytown, New York (the Tarrytown Hotel).

        b.    Between approximately 11:30 p.m. on August 11,

5

2022, and approximately 12:45 p.m. on August 12, 2022, the 5806 Number instructed the UC in English to position himself outside of the lobby of the Tarrytown Hotel. At approximately 12:45 p.m., law enforcement observed a black Infiniti SUV (the "Black Infiniti") drive up to the front door of the Tarrytown Hotel. Officers observed a woman, later identified as the Victim, exit the Black Infiniti. I understand that the Victim later told law enforcement that YSENNI GOMEZ, a/k/a "Ysenni Peguero," a/k/a "Carolina," the defendant, who was driving the vehicle that the Victim was in, pointed out the UC to the Victim and instructed her that he was her next customer.

c. The Victim approached the UC, after which the Victim and the UC walked together to a predetermined hotel room. Once the two entered the hotel room, the Victim pulled condoms out of a purse that she was carrying and removed her shoes. The Victim also began to undress. The Victim and the UC then communicated the types of sex acts to be performed via Google Translate, and the Victim nodded. The UC then signaled to other law enforcement to enter the room.

d. After the Victim entered the Tarrytown Hotel with the UC, law enforcement maintained visual surveillance on the Black Infiniti. Following a conversation with the Victim by law enforcement, as described below, GOMEZ was detained and brought to the Greenburgh Police Station, where she was subsequently arrested.

e. While GOMEZ was detained, law enforcement captured a photo of GOMEZ's Pennsylvania driver's license. Law enforcement subsequently showed an image of GOMEZ's driver's license to the Victim, who confirmed, in sum and substance, that GOMEZ was the person who drove the Victim to the Tarrytown Hotel and was the person who had coerced her into performing sex acts. The Victim was subsequently taken to Greenburgh Police Station to be interviewed.

### GOMEZ's Use of the Internet to Promote Commercial Sex Acts

7. Based on a review of publicly available portions of Bedpage.com, my conversations with law enforcement, and my involvement in this investigation, I am aware of the following:

a. The Online Advertisement described above included a contact telephone number, namely the 5806 Number. Also as described above, the UC texted and communicated by telephone

6

with the 5806 Number to arrange a commercial sex act.

      b.    After GOMEZ' arrest, law enforcement recovered two iPhones from inside of the Black Infiniti. Law enforcement subsequently called the 5806 Number. One of the two recovered iPhones ("iPhone-1") began to ring, indicating that it was associated with the 5806 Number.

      c.    According to information retrieved from a law enforcement database, the 5806 number is associated with over 1,600 online advertisements soliciting sex between in or about December 2012 until August 11, 2022.

WHEREFORE, the deponent respectfully requests that a warrant be issued for the arrest of YSENNI GOMEZ, a/k/a "Ysenni Peguero," a/k/a "Carolina," the defendant, and that she be imprisoned or bailed, as the case may be.

_____
PAO MEI FISHER
Special Agent
Federal Bureau of Investigation


Sworn to me through this
___ day of August, 2022

_____
HONORABLE PAUL E. DAVISON
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

7