

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*United States District Courthouse*
*300 Quarropas Street*
*White Plains, New York 10601*

September 7, 2022

**BY CM/ECF & EMAIL**
The Honorable Nelson S. Román
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

    Re:    ***United States v. Ysenni Gomez*, 22 Mag. 6663**

Dear Judge Román:

    On August 12, 2022, the parties appeared before the Honorable Judge Paul E. Davison for an initial appearance in the above-referenced matter. During the appearance, the parties made arguments regarding detention and Judge Davison ordered that the defendant be detained based on risk of flight. Dkt. No. 2. Defendant appealed on August 15, 2022, and the matter was assigned to this Court. In advance of the anticipated detention hearing in this matter on September 8, 2022, the Government respectfully submits this letter in support of its request that this Court uphold Judge Davison's initial determination of detention pending trial. As explained below, the Government believes there are no conditions or combination of conditions of release that would reasonably assure the defendant's appearance or the safety of the community.

**I.    Background**

    By way of background, the defendant is charged with sex trafficking by means of force, threats, fraud, and coercion and using an interstate facility to promote unlawful activity (here, prostitution). 18 U.S.C §§ 1591, 1952. Between in or about July 2022 and August 12, 2022, the defendant transported, advertised, provided, and otherwise facilitated the sex trafficking of a Spanish-only speaking Venezuelan immigrant (the "Victim") by threatening to have her deported if she did not comply. The Victim, who arrived in the United States approximately nine months ago, is in the process of seeking legal asylum but does not currently have a permanent legal status with the United States.

For the reasons outlined below, the Government believes that detention is appropriate in this case.

### I.    Applicable Law

Under 18 U.S.C. § 3145(b), the defendant may seek review of a magistrate judge's order detaining him pending trial from the district court with jurisdiction over the case. The district court conducts this review *de novo*. *See United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985).

Under the Bail Reform Act, pretrial detention is required if "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). The Complaint here charges the defendant in Count One with sex trafficking by means of force, threats, fraud, and coercion, which carries a mandatory sentence of 15 years' imprisonment. 18 U.S.C. §1591(b)(1).

In order for the Court to detain a defendant, the Government must show "by clear and convincing evidence that the defendant presents a danger to the community and by the lesser standard of a preponderance of the evidence that the defendant presents a risk of flight." *United States v. English*, 629 F.3d 311, 319 (2d Cir. 2011) (internal quotation marks omitted). The Government may meet its burden "by proffer alone." *United States v. LaFontaine*, 210 F.3d 125, 131 (2d Cir. 2000) (internal quotation marks omitted). "[B]ail hearings are typically informal affairs, not substitutes for trial or discovery" and so "courts often base detention decisions on hearsay evidence." *United States v. Abuhamra*, 389 F.3d 309, 321 n.7 (2d Cir. 2004) (internal quotation marks omitted).

Finally, where danger is established, courts must be wary of attempting to craft conditions of pretrial release that protect the community. Even the most onerous conditions of pretrial release, up to and including home incarceration, cannot safeguard the community because they cannot guarantee that a defendant will not use phones or other devices to facilitate additional crimes. *Mercedes*, 254 F.3d at 436-37 (noting the inadequacy of such conditions to prevent dangerous defendants from posing a threat to their communities); *United States v. Jimenez*, 104 F.3d 354 (2d Cir. 1996) ("We have repeatedly held that bail on conditions similar to those imposed on [defendant], including home detention, does not ensure the safety of the community.") (unpublished). Nor does it guarantee that a defendant will actually comply with a set of imposed conditions. *See, e.g.*, *United States v. Millan*, 4 F.3d 1038, 1049 (2d Cir. 1993) (noting "[h]ome detention and electronic monitoring" largely operate on the "word" of the defendant (internal quotation marks omitted)).

September 7, 2022
Page 3 of 7

### III. The Defendant Poses A Serious Risk of Flight

At the initial appearance, Judge Davison agreed with the Government that the defendant posed a serious flight risk that no combination of bail conditions could overcome. Judge Davison was correct for two reasons.

First, the defendant faces a mandatory minimum sentence of 15 years in prison and a statutory maximum of life in a case that, as described below, is supported by powerful evidence, including eyewitnesses who saw the defendant drive the Victim to a commercial sex act, the defendant's own statements in WhatsApp and text messages, and evidence showing that she posted the sexual advertisement that led to her arrest using a phone number seized during arrest. This creates a strong incentive to flee. *See United States v. Williams*, 654 F. App'x 3, 4 (2d Cir. 2016) (summary order) (affirming district court order of detention where the district court found, among other things, "the strength of the evidence against [the defendant] coupled with the significant sentence [the defendant] potentially faced," created a risk of flight).

Second, as discussed at the initial detention hearing, the defendant is a citizen of the Domnican Republic and travelled to the country less than one month before her arrest. Law enforcement also found records showing that the defendant had access to largue quantities of liquid assets flowing into and out of accounts she controlled—specifically, a currency transaction report filed by TD Bank shows that on December 6, 2021, an account in the defendant's control deposited $14,000 and then withdrew $16,2000 from an ATM. Notably, the document lists the defendant's occupation as "Uber driver" and the defendant reported that she was unemployed with significantly lower liquid assets to Pretrial Services, which makes it more likely that the defendant has illegitimate quantities of cash that she could utilize to flee prosecution.

Finally, as stated in the Pretrial Report, the defendant has a history of failing to appear at predetermined court dates. Accordingly, the nature and circumstances of the offenses charged, combined with the weight of the evidence, the defendant's connections to another country, and her history of failing to appear, demonstrate by a preponderance of evidence that she poses a serious flight risk and should be detained pending trial. As Judge Davison found, the Court can and should detain the defendant pending trial on these grounds alone.

### IV. No Condition or Combination of Conditions Will Reasonably Assure the Safety of the Victim or the Community

The Government also respectfully submits that there is no condition or set of conditions that can rebut the danger that the defendant poses to the community and to the Victim in this case, particularly given the nature and circumstances of the offense and the weight of the evidence against the defendant.

***Nature and Circumstances of the Charges.***  The defendant is charged with sex trafficking a non-English speaking immigrant with no lawful status by threatening to have her deported if she did not comply with the defendant's demands. Section 1591 defines "coercion," in part, as "the abuse or threatened abuseof law or legal process." 18 U.S.C. § 1591(e)(2).  A person who threatens deportation is exposes themselves to liability for such coercion.  *Cf. United States v. Rivera*, 2012 WL 2339318 (E.D.N.Y. June 19, 2012) (bar owners who threatened deportation were properly exposed to liability under 18 U.S.C. § 1589, which uses nearly identical "abuse of . . . legal process" language).

As the Government argued at the initial bail hearing before Judge Davison, sex trafficking by means of coercion is an inherent threat to the community, and the facts underlying this particular case are incredibly troubling.  As described more fully in the complaint, the defendant appears to be the mastermind of the sex trafficking operation, and was responsible for, among other things, (1) posting false advertisements to lure in unsuspecting victims, (2) arranging the commercial sex acts with potential buyers, (3) posting sexual advertisements of women for commercial sex acts, and (4) transporting women to and from commercial sex acts.  She also received a large percentage of the profits made by the Victim when she performed commercial sex acts and often would receive funds directly from the purchasers.

***The Strength of the Evidence.***  There is strong evidence supporting these charges.  On August 11, 2022, an FBI officer ("Officer-1") located an online advertisement under the "escort" section of Bedpage.com that was tagged with the location "Westchester County" offering sexual services (the "Online Ad").  The Online Ad included a telephone number ending in "5806," (the "5806 Number"), which law enforcement later determined was associated with one of the cell phones seized from the defendant on the night of her arrest.  Law enforcement has the text messages between Officer-1 and the defendant arranging the provision of commercial sex acts, and multiple law enforcement officers, including Officer-1, saw the defendant drive the Victim to the hotel location where she had arranged the purported commercial sex act with Officer-1.  Law enforcement also received multiple screenshot images of conversations between the defendant and the Victim providing detailed information about the times that the defendant pimped the Victim for financial benefit.

Since the initial hearing, the Government and the FBI have continued investigation the charges described in the Complaint and have uncovered additional evidence supporting the charges.  Law enforcement has begun to review and translate the entirety of the text and WhatsApp messages located on the defendant's phone, which confirms that the defendant does have at least one co-conspirator with whom she discusses phone numbers of potential females that they are looking at hiring,

clients, photos of females that may work for them, and prices of sexual acts.[1] The Government also received confirmation from Bedpage.com that the the 5806 Number associated with the defendant is listed in the subscriber information associated with the Online Ad.

**The Danger Posed by the Defendant's Release.** In addition to the significant fear of retaliation that the Victim has repeatedly raised for coming forward with the defendant's above-described actions, there is reason to believe that there are other victims who may be at risk of continued harm should the defendant be released.

As discussed above, law enforcement has found WhatsApp messages between the defendant and one co-conspirator discussing, among other things, women in the context of commercial sex acts and the prices of commercial sex acts. Law enforcement also determined that the 5806 Number is associated with 1,600 online sexual advertisements between 2012 and the Online Ad described above. While agents have determined that at least some of these advertisements may be duplicate ads placed on different website, there are still an enormous number of unique advertisements that have images of multiple different women. The Victim also has described how she had to "cover" at least one commercial sex act that appears to have been arranged for another woman.

This is also supported by the level of sophisitication of the Facebook restaurant job posting ruse. The Government understands from the Victim that the post, which has since been deleted, was placed on a Facebook Page specifically targeting non-English speaking residents without legal documentation and that the defendant initially met with the Victim at the purported restaurant. The Victim also states that the defendant inquired about her legal status at that initial interview and before telling her about the true nature of the job that the defendant wanted the Victim to perform. Accordingly, the Government argues that no condition or combination of conditions could assure the safety of either the Victim or the other women who may have worked or are working unwillingly for the defendant and her co-conspirator.

Of course, the above-proffered evidence is certainly not all of the Government's evidence against the defendant, and a bail hearing is not a "mini-trial" or a "discovery tool for the defendant." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986). But even this should dispel the notion that the defendant can overcome the presumption of detention in this case, or can be released on conditions that would reasonably assure her appearance or the safety of the community.

---

[1] Nearly all of the relevant communications on the defendant's phone are in Spanish. Law enforcement has begun the process of having the messages translated to English but does not yet have an official transcript. Law enforcement is aware of the contents of the messages because there are Spanish speakers on the prosecution team.

### V. Any Proposed Bail Package Would Not Eliminate the Danger to the Community or the Risk of Flight

The Government anticipates that the defendant may present a bail package either similar to the one requested at the initial hearing, which consisted of a $250,000 unsecured bond and other conditions listed by Pretrial Services, or one that consists of home incarceration/detention/confinement, electronic monitoring, and/or a secured bond. To start, an unsecured bond does nothing to assure the safety of the community, particularly given that the primary nature of the defendant's operation is handled by electronic devices. There is nothing to stop the defendant from continuing to commit crimes or conspire with others while bailed, particularly given the fact that defendant has co-conspirators both known and unknown. And in any case, it is an imperfect measure to assure the defendant's presence in court, particularly where the defendant has a history of failing to appear.

Furthermore, "[h]ome detention and electronic monitoring" largely operate on the "word" of the defendant that she will be compliant. *United States v. Millan*, 4 F.3d 1038, 1049 (2d Cir. 1993) (internal quotation marks omitted). Indeed, "electronic surveillance systems can be circumvented by the wonders of science and of sophisticated electronic technology, and . . . monitoring equipment can be rendered inoperative." *United States v. Orena*, 986 F.2d 628, 632 (2d Cir. 1993) (internal quotation marks omitted). In other words, the bail package the defendant may propose has limited efficacy in preventing further criminal activity or flight. *See United States v. Jimenez*, 104 F.3d 354, 354 (2d Cir. 1996) ("We have repeatedly held that bail on conditions similar to those imposed on [defendant], including home detention, does not ensure the safety of the community."). As Judge Rakoff noted, "home confinement, while important, is not enough to prevent someone who is inclined to commit serious criminal acts from continuing down that path." Bond Hearing Tr., at 28, *United States v. Rivera*, 20 Cr. 6 (ECF No. 17) (S.D.N.Y. Mar. 25, 2020).

Simply put, there ist "no condition or combination of conditions will reasonable assure the safety of any other person and the community." 18 U.S.C. § 3142(e)(1).

### VI. Conclusion

For the reasons stated above, the Court should order the defendant detained pending trial because there is no condition or set of conditions that would reasonably assure the safety of the community or the appearance of the defendant.

                                    Respectfully submitted,

                                    DAMIAN WILLIAMS
                                    United States Attorney

                           By:  _____
                                    Kaiya Arroyo
                                    Assistant United States Attorney
                                    Southern District of New York
                                    (914) 993-1919

cc:   All Counsel of Record (by CM/ECF)
       Pretrial Services (by email)