# Federal Defenders
## OF NEW YORK, INC.

Southern District
81 Main Street, Suite 300
White Plains, N.Y. 10601-4150
Tel: (914) 428-7124 Fax: (914) 948-5109

David E. Patton
*Executive Director
and Attorney-in-Chief*

Southern District of New York
Jennifer L. Brown
*Attorney-in-Charge*

September 7, 2022

**BY ECF & E-MAIL**

The Honorable Nelson S. Román
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

      Re: *United States v. Ysenni Gomez*, 22-mj-6663

Dear Honorable Judge Román:

I write in response to the government's letter filed earlier today and in anticipation of the bail appeal scheduled before Your Honor for tomorrow, September 8, 2022, at 11:00 a.m. A copy of the transcript of the bail hearing on August 12, 2022, before the Honorable Paul E. Davison was provided to chambers earlier today (herein cited as "Tr."). In addition, in the last week, the government has furnished new information that had not been available at the initial bail hearing before Judge Davison that I believe bears on the issue of detention and weighs in favor of Ms. Gomez's release.

**I.    Proposed Bail Package**

At initial hearing, I proposed a $250,000 unsecured bond co-signed by two financially responsible persons and the release conditions proposed by Pre-Trial Services, which is also recommending Ms. Gomez's release. Tr. p. 16. We believe these conditions would reasonably assure Ms. Gomez's appearance as well as the safety of the community. Should the Court feel that additional restrictions are necessary, we have interviewed two additional people that we believe would qualify as financially responsible persons and therefore, if there are concerns, would propose an unsecured bond co-signed by four financially responsible persons. In addition, three of the potential co-signors, specifically her sister, her sister-in-law, and her father-in-law, have personal property, specifically their homes, that they are prepared to use as collateral to

partially secure the bond. It is respectfully submitted that such a bail package would more than alleviate any concerns regarding Ms. Gomez's potential risk for flight.

## II. Ms. Gomez Should be Released on Conditions

In order to detain Ms. Gomez, the government bears the burden of proving by clear and convincing evidence that she presents a danger to the community and/or by a preponderance of the evidence that she is a flight risk. As the Supreme Court has recognized, "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Judge Davison detained Ms. Gomez at the August 12, 2022, bail hearing only based on risk for flight. It is respectfully submitted that the government cannot meet its burden for either risk for flight or danger to the community.

### A. Ms. Gomez is Not a Flight Risk

In detaining Ms. Gomez, Judge Davison determined that although she was not a danger to the community, she was a flight risk. Tr. pp. 23-24. Judge Davison relied on the fact that Ms. Gomez was facing a 15-year mandatory minimum, was a dual citizen of the United States and the Dominican Republic, had family in the Dominic Republic, had travelled back and forth with regularity, and appeared to have access to cash. *Id.*

Ms. Gomez is charged with violating 18 U.S.C. §§ 1591(a)(1), (a)(2), 2, sex trafficking by means of force, threats, fraud, and coercion, which carries a 15-year mandatory minimum sentence and up to lifetime imprisonment. She is also charged with violating 18 U.S.C. §§ 1952(a)(3), 2, which carries a maximum term of imprisonment of 5 years.[1] As described further below, although Ms. Gomez faces a 15-year mandatory minimum on count one, the weight of the evidence is weak and the evidence as to that count rests squarely with a single witness who has a strong motivation to claim that she was coerced into participating in commercial sex acts.

Ms. Gomez is a dual citizen of the United States and the Dominican Republic—a fact that she was upfront an honest about when the Court inquired. Tr. p. 8, lines 10-17. She possesses a United States passport that her family has in their possession, and she is prepared to surrender as a release condition. She does not possess a Dominican Republic passport. The only Dominican

---

[1] At the bail hearing, I had mistakenly stated that this count caried a maximum of 20 years, which is correct for a violation of 18 U.S.C. § 1952(a)(2). Tr. p. 16, lines 13-18. However, violations of 18 U.S.C. § 1952(a)(3), charged here, is a maximum of 5 years. *See* 18 U.S.C. § 1952(a)(3)(A).

Republic government issued document she possessed was an identification card that was seized upon her arrest and is currently in the possession of law enforcement.

Her mother does reside in the Dominican Republic, and Ms. Gomez was honest with Pre-Trial Services regarding her travel to the Dominican Republic. She did tell Pre-Trial Services during her interview that that both her father and her brother, who resided in the Dominican Republic, had passed away in recent years. Her father passed away three years ago and her brother last year. As noted in the report, she goes to the Dominican Republic once or twice a year and has travelled there recently to assist her mother.

During the bail hearing, the government pointed to a single cash transaction at an ATM over nine months ago and now cites to this as support for the assertion that Ms. Gomez has access to large quantities of liquid assets with which she could attempt to flee. Govt. Ltr. ECF No. 5 at 3. This single transaction occurred in the beginning of December 2021, shortly after Ms. Gomez's birthday and before the holidays, and was given to her by her mother. There is no evidence that she currently has access to any substantial amount of cash or any other assets of value, which would give her means to flee the jurisdiction. Indeed, she and her husband have limited financial means and she is not currently working.

The government repeatedly points to a "history of failing to appear" as a basis for determining that Ms. Gomez is a flight risk. Ms. Gomez has a limited criminal history. The "history" is based on two bench warrants issued over ten years ago—one issued on December 20, 2010, and the other on March 30, 2011. These warrants were issued after Ms. Gomez had pleaded guilty on August 20, 2010, for a driving while ability impaired by alcohol conviction for which she was sentenced to pay a fine. Given that she was already sentenced at the time the warrants were issued, these warrants were likely not because of a failure to appear for a court appearance, but likely for failing to pay the fine by the designated date. In each instance the warrant was cleared shortly thereafter, the last being cleared the following day. More importantly, for her second conviction, which also occurred over 10 years ago, she successfully completed three years of probation without a single violation or any subsequent arrests until her arrest here. Such a records suggests that she is not a flight risk.

**B. Ms. Gomez Is Not a Danger to the Community**

In determining whether there are conditions of release that can be set, the Bail Reform Act instructs that a judicial officer shall consider the factors outlined in 18 U.S.C. §3142(g),

3

which include, the nature and circumstances of the offense charged, the weight of the evidence against the person, the history and characteristics of the person, and the nature and seriousness of any danger to any person or the community that would be posed by the person's release. *See also United States v. Mattis*, 963 F.3d 285, 294 (2d Cir. 2020) ("As a threshold matter, however, we must observe that the entire system for determining bail is premised on the belief that, at least to some extent, all criminal acts are aberrant. The very reason that Congress directed district courts to consider factors beyond just the severity of the offense is the recognition that an individual is more than the crime of which that individual has been accused."). In this case, those factors weigh in favor of release.

**1) Nature and Circumstances of Offense Charged and the Weight of the Evidence**

The nature and circumstances of count one is undoubtedly serious. Ms. Gomez faces a mandatory minimum sentence of 15-years if convicted of this offense. However, Ms. Gomez is presumed to be innocent of this conduct and, more significantly, the weight of the evidence with respect to count one is weak. The only evidence of Ms. Gomez using force, threats, fraud, or coercion to engage another person in sex trafficking comes from the purported victim. All the other evidence the government proffers, pertains to Ms. Gomez allegedly promoting prostitution, which supports count two, a charge that carries significantly less sentencing exposure with a maximum of 5 years imprisonment. Significantly, the purported victim to count one, who has no status in this country and a pending asylum application, only claimed to be a victim after it was revealed that the person she was to meet for commercial sex acts was in fact an undercover agent and this was part of a sting operation.

In addition to this information, which was before Judge Davison, the government made a *Brady* disclosure pursuant to *Brady vs. Maryland* on the evening of Monday, September 5, 2022, providing a portion of a WhatsApp conversation between Ms. Gomez and the purported victim, which occurred one week before the attempted commercial sex act alleged in the complaint. A copy of that conversation is attached hereto as Exhibit A.[2] In this conversation, the purported victim expresses concern regarding a photograph of her that was posted on a website and Ms. Gomez appears to be explaining how it could have mistakenly happened. Significantly, the

---

[2] This conversation is in Spanish. The government did not provide a translation. However, a staff interpreter with the Federal Defenders of New York, Inc. provided an unofficial translation, which is attached to the exhibit.

relationship between the two does not appear to be coerced at all. In the context of this conversation, they appear to have a friendly relationship wherein they joke around with one another and appear to be apologetic to one another over the confusion.

The government also makes repeated reference to a phone number ended in 5806, which appears to be associate with approximately 1600 online ads offering commercial sex acts. Although the phone associated with this number was located in Ms. Gomez's car at the time of her arrest, a car the purported victim was seen leaving before entering the hotel, no information has been proffered or provided that ties this phone to Ms. Gomez exclusively, such as cellular telephone records or subscriber information. Further, there is no additional information associated with this number that suggests that any person listed in these ads was being forced to engage in sex trafficking against their will. Again, the only evidence proffered to support that assertion comes from the single purported victim noted in the complaint.

2. **Ms. Gomez's History and Characteristics**

Ms. Gomez was born in New York and has lived here for entire life. She is the mother of three children, the eldest is 18 and the youngest just turned 5 years old. She is not currently working and does some side work notarizing documents. She has strong family ties in the New York area including her husband, children, sister, brother-in-law, cousins, and in-laws. She has lived at the same address the last 5 years with her family.

She has no physical health or mental health issues. Nor does she have any issues with substance abuse. As noted, she has a minor misdemeanor record from over ten years ago. The only warrants she ever received were also over ten years ago and do not appear related to missing a court appearance. She was not under any supervision at the time of her arrest, but for her last conviction, she successful completed three years of probation.

3. **The Danger to Any Person or the Community**

Although the government has previously asserted that the purported victim is in fear of Ms. Gomez, there is no allegation that Ms. Gomez physical threatened the purported victim, or anyone associated with her, with violence. Rather, all the alleged threats appear to be related to the purported victim's immigration status. There would be no fear of any of those alleged threats being carried out if Ms. Gomez were to be released as the government is already aware of them and would not credit them with respect to the purported victim's asylum application. The

government theorizes that Ms. Gomez may be a danger to the community because she would have access to the internet, but, if released, she would be under pre-trial supervision and would face greater exposure on this case and any new case if she were to commit a new offense. Further, if the Court were concerned about her access to the internet, she could have a condition in place to permit computer monitoring or limiting her internet usage. This should not be a basis for detention.

  Ms. Gomez respectfully requests Your Honor consider the included in reviewing her bail appeal.

            Sincerely,

            Elizabeth K. Quinn
            Assistant Federal Defender
            Counsel for Ysenni Gomez

cc: Kaiya Arroyo, AUSA